MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------X
MANUEL BARRO, BRAULIO
HERNANDEZ, LUIS EDUARDO CHAR
MATZ, and JUAN CARLOS CHAR ORTIZ,
*individually and on behalf of others similarly*
*situated,*

|  |  |
|---|---|
| *Plaintiffs*, | **COMPLAINT** |
| -against- | **COLLECTIVE ACTION UNDER 29 U.S.C. § 216(b)** |
|  | **ECF Case** |

CHOKDEE NYC INC. (D/B/A THAI
TERMINAL), NUTTAWUT
VEERAPORNPHIMON, PANTIPA
VEERAPORNPHIMON, HAM DOE, and
OAT DOE,

                                  *Defendants.*
-----------------------------------------------------X

      Plaintiffs Manuel Barro, Braulio Hernandez, Luis Eduardo Char Matz, and Juan Carlos

Char Ortiz , individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by

and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief,

and as against Chokdee NYC Inc. (d/b/a Thai Terminal), ("Defendant Corporation"), Nuttawut

Veerapornphimon, Pantipa Veerapornphimon, Ham Doe, and Oat Doe, ("Individual Defendants"),

(collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

      1.     Plaintiffs are former employees of Defendants Chokdee NYC Inc. (d/b/a Thai

Terminal), Nuttawut Veerapornphimon, Pantipa Veerapornphimon, Ham Doe, and Oat Doe.

2.    Defendants own, operate, or control a Thai restaurant, located at 349 E 12th St under the name "Thai Terminal".

3.    Upon information and belief, individual Defendants Nuttawut Veerapornphimon, Pantipa Veerapornphimon, Ham Doe, and Oat Doe, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the restaurant as a joint or unified enterprise.

4.    Plaintiffs were employed as food preparers, kitchen helpers, cleaners, dishwashers, and delivery workers at the restaurant located at 349 E 12th St.

5.    Plaintiffs were ostensibly employed as delivery workers. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to preparing food, washing dishes, cleaning the grill, cleaning the kitchen, mopping the floor, taking out trash, twisting and tying up cardboard boxes, carrying down and stocking deliveries in the basement, bringing up items from the basement for the kitchen staff and cleaning the basement (hereafter the "non-tipped duties").

6.    At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

7.    Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.    Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

9.    Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

10.     Defendants employed and accounted for Plaintiffs as delivery workers in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

11.     Regardless, at all relevant times, Defendants paid Plaintiffs at a rate that was lower than the required tip-credit rate.

12.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day. 12 N.Y. C.R.R. §146.

13.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay them at the lower Tip-credit Rate (which they still failed to do).

14.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

15.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

16.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the

"Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

17.    Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

19.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a Thai restaurant located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

### *Plaintiffs*

20.    Plaintiff Manuel Barro ("Plaintiff Barro" or "Mr. Barro") is an adult individual residing in Bronx County, New York.

21.    Plaintiff Barro was employed by Defendants at Thai Terminal from approximately January 2014 until on or about June 30, 2020.

22.    Plaintiff Braulio Hernandez ("Plaintiff Hernandez" or "Mr. Hernandez") is an adult individual residing in Kings County, New York.

23.    Plaintiff Hernandez was employed by Defendants at Thai Terminal from approximately November 2014 until on or about July 30, 2020.

24.    Plaintiff Luis Eduardo Char Matz ("Plaintiff Luis" or "Mr. Luis") is an adult individual residing in Kings County, New York.

25.    Plaintiff Luis was employed by Defendants at Thai Terminal from approximately May 20, 2018 until on or about March 20, 2020.

26.    Plaintiff Juan Carlos Char Ortiz ("Plaintiff Carlos" or "Mr. Carlos") is an adult individual residing in Kings County, New York.

27.    Plaintiff Carlos was employed by Defendants at Thai Terminal from approximately July 2017 until on or about June 22, 2020.

*Defendants*

28.    At all relevant times, Defendants owned, operated, or controlled a Thai restaurant, located at 349 E 12th St under the name "Thai Terminal".

29.    Upon information and belief, Chokdee NYC Inc. (d/b/a Thai Terminal) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 349 E 12th St.

30.    Defendant Nuttawut Veerapornphimon is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Nuttawut Veerapornphimon is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Nuttawut Veerapornphimon possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants,

including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

31.    Defendant Pantipa Veerapornphimon is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Pantipa Veerapornphimon is sued individually in her capacity as owner, officer and/or agent of Defendant Corporation. Defendant Pantipa Veerapornphimon possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

32.    Defendant Ham Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Ham Doe is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Ham Doe possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

33.    Defendant Oat Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Oat Doe is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Oat Doe possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and

compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

34.     Defendants operate a Thai restaurant located in the East Village section of Manhattan in New York City.

35.     Individual Defendants, Nuttawut Veerapornphimon, Pantipa Veerapornphimon, Ham Doe, and Oat Doe, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, and control significant functions of Defendant Corporation.

36.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

37.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

38.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

39.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

40.     Upon information and belief, Individual Defendants Nuttawut Veerapornphimon, Pantipa Veerapornphimon, Ham Doe, and Oat Doe operate Defendant Corporation as either an alter ego of themselves and/or failed to operate Defendant Corporation as an entity legally separate and apart from themselves, by among other things:

a) failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

b) defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c) transferring assets and debts freely as between all Defendants,

d) operating Defendant Corporation for their own benefit as the sole or majority shareholders,

e) operating Defendant Corporation for their own benefit and maintaining control over this corporation as a closed Corporation,

f) intermingling assets and debts of their own with Defendant Corporation,

g) diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect their own interests, and

h) Other actions evincing a failure to adhere to the corporate form.

41.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

42.    In each year from 2014 to 2020, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

43.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

## Individual Plaintiffs

44.     Plaintiffs are former employees of Defendants who were employed as food preparers, kitchen helpers, cleaners, dishwashers, and ostensibly as delivery workers. However, they spent over 20% of each shift performing the non-tipped duties described above.

45.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

## Plaintiff Manuel Barro

46.     Plaintiff Barro was employed by Defendants from approximately January 2014 until on or about June 30, 2020.

47.     Defendants employed Plaintiff Barro as a food preparer, kitchen helper and ostensibly as a delivery worker.

48.     However, Plaintiff Barro was also required to spend a significant portion of his work day performing the non-tipped duties described above.

49.     Although Plaintiff Barro ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

50.     Plaintiff Barro regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

51.     Plaintiff Barro's work duties required neither discretion nor independent judgment.

52.     Throughout his employment with Defendants, Plaintiff Barro regularly worked in excess of 40 hours per week.

53.     From approximately November 2014 until on or about March 26, 2020, Plaintiff Barro worked from approximately 11:45 a.m. until on or about 11:00 p.m., on Mondays, from approximately 11:45 a.m. until on or about 11:30 p.m. to 11:45 p.m., 3 days a week, and from approximately 4:00 p.m. until on or about 11:30 p.m. to 11:45 p.m., on Fridays (typically 54 to 55 hours per week).

54.     From approximately April 20, 2020 until June 30, 2020, Plaintiff Barro worked from approximately 2:00 p.m. until on or about 11:00 p.m., 2 days a week (typically 18 to 19 hours per week).

55.     Throughout his employment, Defendants paid Plaintiff Barro his wages in cash.

56.     From approximately November 2014 until on or about January 2015, Defendants paid Plaintiff Barro a fixed salary of $325 per week.

57.     From approximately February 2015 until on or about December 2015, Defendants paid Plaintiff Barro a fixed salary of $390 per week.

58.     From approximately February 2016 until on or about December 2016, Defendants paid Plaintiff Barro a fixed salary of $400 per week.

59.     From approximately January 2017 until on or about December 2017, Defendants paid Plaintiff Barro a fixed salary of $425 per week.

60.     From approximately January 2018 until on or about May 2018, Defendants paid Plaintiff Barro a fixed salary of $450 per week.

61.     From approximately June 2018 until on or about March 2020, Defendants paid Plaintiff Barro a fixed salary of $500 per week.

62.     From approximately April 2020 until on or about June 2020, Defendants paid Plaintiff Barro $15.00 per hour.

63.    Plaintiff Barro's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

64.    For example, Defendants required Plaintiff Barro to start working 15 minutes prior to his start time every day and continue working 30 to 45 minutes past his scheduled departure time 3 days a week, and did not pay him for the additional time he worked.

65.    Defendants never granted Plaintiff Barro any breaks or meal periods of any kind.

66.    Plaintiff Barro was never notified by Defendants that his tips were being included as an offset for wages.

67.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Barro's wages.

68.    Plaintiff Barro was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

69.    Defendants took improper and illegal deductions from Plaintiff Barro's wages; specifically, Defendants deducted money from Plaintiff Barro's weekly wages for meals he never ate.

70.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Barro regarding overtime and wages under the FLSA and NYLL.

71.    Defendants did not provide Plaintiff Barro an accurate statement of wages, as required by NYLL 195(3).

72.    Defendants did not give any notice to Plaintiff Barro, in English and in Spanish (Plaintiff Barro's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

73.     Defendants required Plaintiff Barro to purchase "tools of the trade" with his own funds—including one regular bicycle, one electric bike, a bike lock, a bike helmet, and bike lights.

*Plaintiff Braulio Hernandez*

74.     Plaintiff Hernandez was employed by Defendants from approximately November 2014 until on or about approximately July 30, 2020.

75.     Defendants employed Plaintiff Hernandez as a food preparer, dishwasher and ostensibly as a delivery worker.

76.     However, Plaintiff Hernandez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

77.     Although Plaintiff Hernandez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

78.     Plaintiff Hernandez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

79.     Plaintiff Hernandez's work duties required neither discretion nor independent judgment.

80.     From approximately November 2014 until on or about December 2014, Plaintiff Hernandez worked from approximately 5:00 p.n. until on or about 11:00 p.m., 1 day a week (typically 6 hours per week).

81.     From approximately December 2014 until on or about December 2015, Plaintiff Hernandez worked from approximately 12:00 p.m. until on or about 11:30 to 11:45 p.m., 4 days a week (typically 46 to 47 hours per week).

82.     From approximately January 2016 until on or about March 2020, Plaintiff Hernandez worked from approximately 12:00 p.m. until on or about 11:30 to 11:45 p.m., 4 days a week and

from approximately 4:00 p.m. until on or about 11:00 to 11:30 p.m., 1 day a week (typically 53 to 55 hours per week).

83.     From approximately April 20, 2020 until on or about July 30, 2020, Plaintiff Hernandez worked from approximately 2:00 p.m. until on or about 11:00 to 11:15 p.m., 1 day a week (typically 9 hours per week).

84.     Throughout his employment, Defendants paid Plaintiff Hernandez his wages in cash.

85.     From approximately November 2014 until on or about December 2014, Defendants paid Plaintiff Hernandez $5.00 per hour.

86.     From approximately January 2015 until on or about December 2016, Defendants paid Plaintiff Hernandez a fixed salary of $360 per week.

87.     From approximately January 2017 until on or about December 2018, Defendants paid Plaintiff Hernandez a fixed salary of $480 per week.

88.     From approximately January 2019 until on or about March 2020, Defendants paid Plaintiff Hernandez a fixed salary of $500 per week.

89.     From approximately April 20, 2020 until on or about July 30, 2020, Defendants paid Plaintiff Hernandez $135.00 per day.

90.     Plaintiff Hernandez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

91.     For example, Defendants required Plaintiff Hernandez to work an additional 30 to 45 minutes past his scheduled departure time almost every day, and did not pay him for the additional time he worked.

92.     Prior to April 2020, Defendants never granted Plaintiff Hernandez any breaks or meal periods of any kind.

93.     Nevertheless, Defendants deducted $5 per day from Plaintiff Hernandez's weekly paycheck for meals he never ate.

94.     Plaintiff Hernandez was never notified by Defendants that his tips were being included as an offset for wages.

95.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Hernandez's wages.

96.     Plaintiff Hernandez was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

97.     On a number of occasions, Defendants required Plaintiff Hernandez to sign a document, the contents of which he was not allowed to review in detail.

98.     Defendants took improper and illegal deductions from Plaintiff Hernandez's wages; specifically, Defendants deducted $5 a day from Plaintiff Hernandez's wages for meals he did not eat.

99.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Hernandez regarding overtime and wages under the FLSA and NYLL.

100.     Defendants did not provide Plaintiff Hernandez an accurate statement of wages, as required by NYLL 195(3).

101.     Defendants did not give any notice to Plaintiff Hernandez, in English and in Spanish (Plaintiff Hernandez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

102.     Defendants required Plaintiff Hernandez to purchase "tools of the trade" with his own funds—including two bicycles (one electric bike and one regular bike), a helmet, and a bike lock.

*Plaintiff Luis Eduardo Char Matz*

103.    Plaintiff Luis was employed by Defendants from approximately May 20, 2018 until on or about March 20, 2020.

104.    Defendants employed Plaintiff Luis as a food preparer, dishwasher, cleaner and ostensibly as a delivery worker.

105.    However, Plaintiff Luis was also required to spend a significant portion of his work day performing the non-tipped duties described above.

106.    Although Plaintiff Luis ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

107.    Plaintiff Luis regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

108.    Plaintiff Luis's work duties required neither discretion nor independent judgment.

109.    Throughout his employment with Defendants, Plaintiff Luis regularly worked in excess of 40 hours per week.

110.    From approximately May 20, 2018 until on or about March 20, 2020, Plaintiff Luis worked from approximately 12:00 p.m. until on or about 12:00 a.m., three days a week, and from approximately 4:00 p.m. until on or about 12:00 a.m., Tuesdays to Thursdays (typically 60 hours per week).

111.    Throughout his employment, Defendants paid Plaintiff Luis his wages in cash.

112.    From approximately May 2018 until on or about December 2019, Defendants paid Plaintiff Luis a fixed salary of $480 per week.

113.    From approximately January 2020 until on or about March 20, 2020, Defendants paid Plaintiff Luis a fixed salary of $500 per week.

114.    Plaintiff Luis's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

115.    For example, Defendants required Plaintiff Luis to start working an additional hour prior  to his scheduled time twice a month and to continue working one hour past his scheduled departure time every day, and did not pay him for the additional time he worked.

116.    Defendants never granted Plaintiff Luis any breaks or meal periods of any kind.

117.    Plaintiff Luis was never notified by Defendants that his tips were being included as an offset for wages.

118.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Luis' wages.

119.    Plaintiff Luis was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

120.    Defendants took improper and illegal deductions from Plaintiff Luis's wages; specifically, Defendants deducted money from Plaintiff Luis's wages for meales he did not eat and $50 from Plaintiff Luis's wages on two occasions for being late.

121.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Luis regarding overtime and wages under the FLSA and NYLL.

122.    Defendants did not provide Plaintiff Luis an accurate statement of wages, as required by NYLL 195(3).

123.    Defendants did not give any notice to Plaintiff Luis, in English and in Spanish (Plaintiff Luis' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

124.    Defendants required Plaintiff Luis to purchase "tools of the trade" with his own funds—including one bicycle, one vest, one helmet, bike lights, and a bike lock.

*Plaintiff Juan Carlos Char Ortiz*

125.    Plaintiff Carlos was employed by Defendants from approximately July 2017 until on or about June 22, 2020.

126.    Defendants ostensibly employed Plaintiff Carlos as a delivery worker.

127.    However, Plaintiff Carlos was also required to spend a significant portion of his work day performing the non-tipped duties described above.

128.    Although Plaintiff Carlos ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

129.    Plaintiff Carlos regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

130.    Plaintiff Carlos's work duties required neither discretion nor independent judgment.

131.    Throughout his employment with Defendants, Plaintiff Carlos regularly worked in excess of 40 hours per week.

132.    From approximately July 2017 until on or about June 22, 2020, Plaintiff Carlos worked from approximately 11:00 a.m. until on or about 11:30 p.m., 3 days a week and from approximately 4:00 p.m. until on or about 11:00 p.m., 2 days a week (typically 51.5 hours per week).

133.    Throughout his employment, Defendants paid Plaintiff Carlos his wages in cash.

134.    From approximately July 2017 until on or about July 2019, Defendants paid Plaintiff Carlos a fixed salary of $480 per week.

135.    From approximately July 2019 until on or about June 22, 2020, Defendants paid Plaintiff Carlos a fixed salary of $500 per week.

136.    Plaintiff Carlos's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

137.    For example, Defendants required Plaintiff Carlos to work an additional half an hour past his scheduled departure time three times a week, and did not pay him for the additional time he worked.

138.    Defendants never granted Plaintiff Carlos any breaks or meal periods of any kind.

139.    Plaintiff Carlos was never notified by Defendants that his tips were being included as an offset for wages.

140.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Carlos's wages.

141.    Plaintiff Carlos was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

142.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Carlos regarding overtime and wages under the FLSA and NYLL.

143.    Defendants did not provide Plaintiff Carlos an accurate statement of wages, as required by NYLL 195(3).

144.    Defendants did not give any notice to Plaintiff Carlos, in English and in Spanish (Plaintiff Carlos's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

145.    Defendants required Plaintiff Carlos to purchase "tools of the trade" with his own funds—including a bicycle, rain gear, boots, and bike maintenance.

*Defendants' General Employment Practices*

146.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

147.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

148.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

149.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

150.    Defendants required Plaintiffs and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

151.    Plaintiffs and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

152.    Plaintiffs' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

153.    Plaintiffs and all other tipped workers were paid below the Tip-credit Rate by Defendants.

154.    However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

155.    New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

156.    In violation of federal and state law as codified above, Defendants classified Plaintiffs and other tipped workers as tipped employees, and paid them at a rate that was below the Tip-credit Rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

157.    Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

158.    Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

159.    Defendants failed to maintain a record of tips earned by Plaintiffs who worked as delivery workers for the tips they received.

160.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

161.    On a number of occasions, Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail.

162.    Defendants paid Plaintiffs their wages in cash.

163.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

164.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

165.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

166.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

167.    Defendants failed to provide Plaintiffs and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

168.    Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary

language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

169.    Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

170.    At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

171.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

172.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

173.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

174.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

175.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

176.    Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

177.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

178.    Plaintiffs (and the FLSA Class members)were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

179.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

180.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

181.    Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

182.     Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

183.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

184.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

185.     Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

186.     Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

187.     Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS

## OF THE NEW YORK STATE LABOR LAW

188.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

189.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

190.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

191.    Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

### OF THE NEW YORK COMMISSIONER OF LABOR

192.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

193.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

194.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

195.    Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING

### REQUIREMENTS OF THE NEW YORK LABOR LAW

196.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

197.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the

physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

198.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

199.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

200.     With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

201.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

202.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

203.     Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs,

further reducing their wages in violation of the FLSA and NYLL. 29 U.S.C. § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

204.    Plaintiffs were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION

### OF THE NEW YORK LABOR LAW

205.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

206.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

207.    Defendants made unlawful deductions from Plaintiffs' wages including, but not limited to, deductions for meals they never ate.

208.    The deductions made from Plaintiffs' wages were not authorized or required by law.

209.    Through their knowing and intentional efforts to take unauthorized deductions from Plaintiffs' wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

210.    Plaintiffs were damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

### VIOLATION OF THE TIMELY PAYMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

211.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

212.    Defendants did not pay Plaintiffs on a regular weekly basis, in violation of NYLL §191.

213.    Defendants are liable to each Plaintiff in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)    Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)    Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)    Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)     Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs;

(l)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(m)    Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs;

(n)     Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(o)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)    Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(r)    Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(s)    Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(t)    All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York

November 16, 2020

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:    _____/s/ Michael Faillace_____
Michael Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 9, 2020

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Manuel Barro

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                               9 de Julio

*Certified as a minority-owned business in the State of New York*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 6, 2020

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              Braulio Hernandez
Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:               6 de junio 2020

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510                                                    Telephone: (212) 317-1200
New York, New York 10165                                                    Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 7, 2020

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Luis Eduardo Char Matz

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      7 de julio de 2020

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510                                         Telephone: (212) 317-1200
New York, New York 10165                                         Facsimile: (212) 317-1620
_____

Faillace@employmentcompliance.com

July 6, 2020

BY ELECTRONIC SIGNATURE


TO:     Clerk of Court,


I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**


Name / Nombre:                          Juan Carlos Char Ortiz

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                          6 de Julio de 2020


*Certified as a minority-owned business in the State of New York*